OHIO VARNISH CO. v. GLIDDEN VARNISH CO.

(District Court, N. D. Ohio, E. D.   January 29, 1913.)

No. 30.

PATENTS (§ 328*)—VALIDITY—PRIOR USE—GRAINING PROCESS AND COMPOUND.
    The Clapp patents, No. 839,363, for a process of producing surfaces in imitation of graining, and No. 909,847, for a graining compound to be used in carrying out such process, *held* void for prior use in the art, and lack of novelty.

In Equity.   Suit 'by the Ohio Varnish Company against the Glidden Varnish Company.   On final hearing.   Decree for defendant.

Albert H. Bates, of Cleveland, Ohio, for complainant.

Offield, Towle, Graves & Offield, of Chicago, Ill., and R. S. Leonard, of Cleveland, Ohio, for defendant.

DAY, District Judge.   The bill of complaint alleges infringement of patent No. 839,363, granted to Ford M. Clapp, of Cleveland, dated December 25, 1906, for an improved "process of producing surfaces in imitation of graining," and patent No. 909,847, dated January 12, 1909, for improvements in "graining compound."   The first patent re-cited relates to a process, and the second to a compound used in carry-ing out the process.   The combined objects sought in both patents is to provide a process and materials for producing a surface in imitation of natural wood, both as to the color and grain characteristics of such wood.

The process described, as contained in the process patent, consists briefly of first applying a flat coat of yellow paint to the surface to be grained, next applying a graining compound carried by a volatile· vehicle, which compound is capable of absorbing color, and by reason of the volatile vehicle, of rapidly drying; next the manipulating of the graining compound by means of the hand or a suitable tool to form streaks therein for representing the grain of the wood to be imitated;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

allowing the vehicle and the graining compound to evaporate, then applying over the graining compound a varnish, the color of the varnish depending upon the color of the wood to be imitated. This may be natural varnish or may be varnish colored to imitate the colors of the various woods sought to be reproduced.

The product patent claims a compound which is intended to be used in carrying out one of the steps in the process patent; that is, the step providing for the graining compound.

In the old art of graining as it existed for some hundreds of years, the coloring matter was carried in the graining compound, whereas, in the patents in suit, the coloring matter is carried in the varnish. The art of graining is an exceedingly old art. Graining had been done in the Tower of London some 200 years ago, and the record would indicate that grainers were a professional class of artisans over 3,000 years ago.

The product patent 909,847, has two claims:

"1. A graining compound in fluid form, consisting of a pigment ground in water and contained ready for use in alcohol as a vehicle."

"2. A composition of matter ready mixed for graining, consisting of substantially equal parts of raw sienna and whiting ground in water to make a thin paste, and thinned with alcohol in colorless form to make the proper consistency."

There are six claims in the process patent No. 839,363, and they substantially provide for a process of producing imitation grain surfaces, consisting in applying in a liquid form a graining compound consisting of permanent earths carried by a quickly evaporating vehicle, allowing such compound to dry, and then applying over the same a varnish carrying a pigment selected according to the wood to be presented, or applying a natural varnish.

Under these two patents the composition used as a graining compound consists of substantially equal portions of raw sienna and whiting, and alcohol is employed as the volatile vehicle. The patents are designed to provide for a ready method of sale of the ingredients mentioned in the process, which can be kept on hand by dealers ready mixed for use and for the trade.

Complainant's expert, Oscar Textor, describes the process and materials of these patents as follows:

"The patentee devised a method whereby a ready prepared universal graining compound could be applied by one not experienced in painting or graining, and with this graining compound were supplied, ready mixed and prepared, various varnishes of different colors, each color designed to impart to the graining the color intended to imitate the natural color of the wood aimed at. The color that it was designed to produce was obtained by the action of the whiting in the graining compound upon the soluble pigment or color in solution in the varnish. The desired colors were obtained by the inexperienced operator without the use of the special knowledge of the art, and by merely following the directions accompanying the graining outfit."

In this first respect, then, the new process differs from the old, namely, no experience is required by the patented process to obtain the desired color.

"All of the articles employed in the operation of graining and finishing are put up in a commercial way ready for use by inexperienced operators."

It is quite apparent that the floor sets manufactured by both complainant and defendant have a large sale. They enable the inexperienced person, desirous of imitating hard wood, without having any particular knowledge, to inexpensively duplicate in their homes the various characteristics and features of hardwood flooring or woodwork. One of the chief features which give these floor sets a commercial value is that they can be kept on hand ready mixed and ready for use. If the marketing or selling of the graining compound ready for use in a suitable form of retainer was the sole point of novelty, there would be no patentable invention in such a device. Averill Chemical Paint Co. v. National Mixed Paint Company et al. (C. C.) 9 Fed. 462.

As the art of graining is an exceedingly old one, it would be natural to inquire whether or not the process and compound described in complainant's patents were in use for the statutory time prior to the complainant's applications. For if they were so used, of course the complainant's patents could have no validity. For many years the process of graining was practically the same. Graining compounds always consisted of a pigment ground in water with some kind of a vehicle added to it. The vehicle varied according to the custom of the user, some using stale beer or vinegar, some using alcohol, benzine, or other substances. Various pigments were used, some grainers used whiting combined with sienna, and the whiting and sienna were used in varying proportions. The product patent covers a substance which is in itself old as to its ingredients, and there is no novelty disclosed by it, except the claim that it is ready for use, and surely such a claim is not patentable.

I have carefully examined the record in respect to the public use of the process referred to in the patents for more than two years prior to the filing dates of the applications. It appears from reading this record that colored varnishes were used for years in the trade, and that graining compounds containing substantially the substances referred to in the complainant's patent were employed, and it was the universal custom to use a ground coat of the nature specified in the patents. Witnesses called by the defendant in reference to this prior use come from all over the country and testify with frankness and in detail concerning the methods pursued by them in carrying on the art or profession of graining. These witnesses and the publications referred to by the defendant indicate to my mind that Clapp, who applied for and received the patents assigned to the complainant herein, took no new steps nor made no new discovery concerning this process and art of graining.

The use of a constant color graining compound required no invention. The graining compounds used were the same for years, and colored varnishes had been extensively employed. A number of defenses have been interposed, and I have not seen fit to consider them all; it being plain to me from the record that there was a prior use of both the compound and process sought to be covered by the patents in suit.

Being of the opinion that the patents are invalid, the bill will be dismissed.